UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OFI INTERNATIONAL, INC.** *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>**PORT NEWARK REFRIGERATED WAREHOUSE,**<br><br>    Defendant. | Civ. No. 2:11-cv-06376 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiffs OFI International, Inc. ("OFI") and Watermark Foods, Inc. ("Watermark") filed this action against Defendant Hudson Refrigeration Company d/b/a Port Newark Refrigerated Warehouse ("Defendant" or "PNRW"). Plaintiffs allege that PNRW mishandled numerous shipments of Plaintiffs' frozen seafood. Specifically, Plaintiffs seek damages for 958,297 pounds of frozen seafood products (the "Subject Goods"), which were allegedly subject to temperature abuse while in storage at PNRW's warehouse at 125 Tyler Street, Newark, New Jersey (the "PNRW Warehouse").

      This matter comes before the Court on Defendant's motion and Plaintiffs' cross-motion for summary judgment under Federal Rule of Civil Procedure 56. Also before the Court is Defendant's motion to strike certain evidence from the summary judgment record. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court will treat Defendant's motion to strike as objections under Rule 56(c) and will partially **SUSTAIN** and partially **OVERRULE** those objections. Additionally, Defendant's motion for summary judgment is **DENIED**, and Plaintiffs' cross-motion for summary judgment is partially **GRANTED** and partially **DENIED**.

    **I.**     **MOTION TO STRIKE/RULE 56 OBJECTIONS**

      Defendant moves to strike the following evidence, which Plaintiffs submitted in opposition to Defendant's motion for summary judgment: (1) portions of the Declaration of Neel Reddy (the "Reddy Declaration"), (2) the Declaration of William Bennett, Esq. (the "Bennett Declaration"), (3) the Declaration of Charles McLaughlin (the "McLaughlin Declaration"), (4) the expert report of Patrick Brecht (the "Brecht Report"), and (5) the expert report of Pierce Powers (the "Powers Report," and together with the

1

Brecht Report, the "Expert Reports"). Following the 2010 amendments to Rule 56, a motion to strike is no longer a proper means of attacking the admissibility of summary judgment evidence. *See Ankney v. Wakefield*, No. 10-1290, 2012 WL 1633803, at *1 (W.D. Pa. May 8, 2012). The Court will thus construe Plaintiff's motion to strike as objections under Rule 56(c). *See id.*

### A. The Declarations

Rule 56(c) provides that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Defendant argues that the Reddy Declaration, the Bennett Declaration, and the McLaughlin Declaration fail to meet these requirements. The Court disagrees, with one exception related to an inadmissible opinion in the McLaughlin Declaration.

### i. Reddy Declaration

Neel Reddy is the President of OFI International and the Vice President of Watermark Foods. Reddy Decl. ¶ 1, ECF No. 70-2. Defendant objects to paragraphs 2, 3, 5, 6, 7, 8, 9, 10, 11, and 12 of the Reddy Declaration. Defendant argues that those paragraphs are not based on personal knowledge, set forth inadmissible facts, and contain information outside of Reddy's competence. The Court will overrule Defendant's objections.

A declaration or affidavit need not explicitly state that the declarant or affiant is competent to testify or that his statements are made on personal knowledge. Rule 56(c)(4) requires not that an affiant state these things, but rather that the affidavit "be made on personal knowledge" and "show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, if a sworn affidavit clearly flows from personal knowledge of a competent affiant, a court may consider it on summary judgment. *See, e.g., Keating v. Bucks County Water & Sewer Auth.*, 2000 WL 1888770 at *4 (E.D. Pa. 2000) (noting that, to extent averments in affidavit sworn to be "true and correct to the best of [affiant's] knowledge, information and belief" clearly were based on personal knowledge, they were appropriately considered on summary judgment).

Furthermore, the Supreme Court has stated that a nonmoving party need not produce evidence in a form that would be admissible at trial to avoid summary judgment. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). Accordingly, the Third Circuit has concluded that ". . . hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that 'would be admissible at trial.'" *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 465-66 n.12 (3d Cir. 1989)).

Regarding paragraph 3, Defendant objects to the statement "Watermark Foods is a "d/b/a' [sic] of RFD Enterprises, LLC, a California Corporation."  Defendant argues that, in their Second Amended Complaint, Plaintiffs alleged that Watermark was a corporation formed under New York law and that Plaintiffs should be bound by that allegation.  *See* Second Am. Compl. ¶ 2, ECF No. 11.  However, Plaintiff confirmed during a November 18, 2014 hearing that the representation in the Second Amended Complaint was a mistake, and that Watermark is registered in California.  Thus, this objection is overruled.

Defendant's objections to a portion of paragraph 2[1] and paragraphs 5 through 12[2] are also unconvincing.  Each paragraph complies with Rule 56(c)(4).  First, as a corporate officer, Reddy is presumed to possess personal knowledge of the acts of the corporation.  *See Catawba Indian Tribe v. State of South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992) (holding that a corporate officer ordinarily possess personal knowledge of acts of corporation and, in absence of proof of no personal knowledge, the personal knowledge element is satisfied).  Further, as a Rule 30(b)(6) representative, Reddy may "testify about information known or reasonably available to the organization." Fed. R .Civ. P. 30(b)(6).  The use of the word "we" in the declaration is thus permissible, because Reddy is testifying on Plaintiffs' behalf.  Second, Reddy will be a declarant produced at trial to offer his statements in admissible form and subject to cross-examination.  Third, the record lays the foundation for Reddy's declarations.  For instance, in his deposition, Reddy discusses both his and his brother's experience in the frozen shrimp industry.  *See* Def.'s Mot. for Summary J. Ex. 2 ("Reddy Dep.") 15:23-17:10, ECF No. 69-4.  This

---

[1] In paragraph 2, Defendant seeks to strike language stating that "between [my brother and me] we have over 30 years of experience importing frozen shrimp into the United States."
[2] Paragraphs 5 through 12 read as follows:

> 5. Mr. von Dohlen guaranteed that PNRW was the [sic] state of the art facility and was equipped to keep our shrimp frozen at 0°F.  We relied on Mr. von Dohlen's representation.
>
> 6. Shortly after meeting with Mr. von Dohlen, Dan Taskilla [sic] sent a one page rate quote sheet.
>
> 7. At no time prior to the loss did PNRW ever provide us with the Terms and Conditions of their warehouse receipt.
>
> 8. Periodically, we would receive receipts filed [sic] in by hand, which listed what shipments PNRW had received.
>
> 9. On numerous occasions after the loss we demanded that all of our cargo be released to us so we could inspect all of the shrimp.  PNRW refused us access to our shrimp and would only let us inspect a small portion of the cargo because they said they were too busy to bring out the cargo for inspection.  They held onto the cargo for more than a month after the initial notice of loss.
>
> 10. After we were able to receive our cargo back we inspected each lot and each carton.  All of the cargo suffered from temperature abuse, some to a lesser extent than others.
>
> 11. If the shrimp was stored at PNRW at 0°F, the shelf life was in excess of 18 months.
>
> 12. We sold the cargo for salvage at the best possible price we could get.

experience, as well as his position as a corporate officer of Plaintiffs, lays the foundation for his declarations in paragraphs 11 and 12. Additionally, regarding paragraph 5, Reddy specifically stated during his deposition that he met with Mr. Van Dohlen, who assured him that there would be no issues with storing the frozen shrimp at PNRW. Reddy Dep. 128:10-129:15. <u>Fourth</u>, Plaintiffs do not need to lay a foundation for or attach the rate quote sheet referenced in paragraph 6, because the declaration has nothing to do with the content of that sheet. Rather, it is simply stating that Plaintiffs received that sheet from Defendant. <u>Fifth</u>, none of these paragraphs constitute inadmissible hearsay. For instance, in paragraph 9, to the extent that Reddy's knowledge of the cargo access issues relied on statements by Chris Bender, the insurance adjuster, Bender provided corroborating deposition testimony about those issues. *See* Def.'s Mot. for Summ. J. Ex. 13 ("Bender Dep.") 13 26:7-28:13, ECF No. 69-20. Accordingly, Plaintiffs can produce him at trial to offer those statements in admissible form. *See Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 470 n.13 (3d Cir. 1998). And regarding paragraph 10, Bender reviewed and inspected the cargo and provided a report to Plaintiffs summarizing his findings. *See* Bender Dep. 29:5-14. <u>Finally</u>, the Court will not disregard paragraph 7 under the sham affidavit doctrine, because paragraph 7 is consistent with Plaintiff's interrogatory responses and Reddy's prior deposition testimony.[3] *See In re CitX Corp.*, 448 F.3d 672, 679 (3d Cir. 2006) (finding that courts may disregard an affidavit submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony). Similarly, the Court will not disregard paragraphs 5 and 10 under that doctrine, because those paragraphs do not necessarily conflict with the record evidence.[4] Accordingly, the Court will overrule Defendant's objections to the Reddy Declaration.

### ii. Bennett Declaration and the McLaughlin Declaration

The Court will also overrule Defendant's objections to the Bennett Declaration and the McLaughlin Declaration. The Bennett Declaration consists of 12 paragraphs. 11 of those paragraphs identify attached exhibits, which are labeled A though K. One of these exhibits – Exhibit F – is the McLaughlin Declaration. Defendant argues that the entire Bennett Declaration is inadmissible, because it is not based on Bennett's personal

---

[3] Defendant argues that paragraph 7 is contrary to Plaintiffs' response to its interrogatories and Reddy's deposition testimony. In their original response, Plaintiffs stated that "PNRW provided its terms and conditions and its warehouse receipts for the Subject Goods," and during his deposition, Reddy confirmed the accuracy of this statement. Def.'s Mot. for Summary J. Ex. 5 p. 6, ECF No. 69-12; Reddy Dep. 120:13-123:14. However, Plaintiffs later supplemented their response to clarify that they did not receive the terms and conditions until after they put Defendant on notice of their loss. Ps.' Opp'n to Mot. to Strike Ex. A, ECF No. 74. This supplemental response is not contrary to the original response or Reddy's deposition testimony. It merely clarifies that Plaintiffs received the terms and conditions *after reporting their loss*.

[4] Paragraph 5 does not necessarily contradict Reddy's deposition testimony that he did not remember any specific discussion of the condition of the warehouse, but only that Defendant guaranteed various services. D.'s Mot. Summ. J. Ex. 2 128:10-129:15. Likewise, nothing in Reddy's deposition testimony necessarily contradicts his declaration that "each lot and each carton were *eventually* inspected" (emphasis added) in paragraph 10.

knowledge.  Defendant also argues that because Exhibits A, B, D, F, and G[5] were produced by Plaintiffs – not Defendant – during discovery and because Plaintiff failed to properly authenticate those exhibits, the Court should not consider them.  Finally, Defendant argues that Exhibit F and Exhibit J were not produced during discovery and are thus inadmissible.

     As an initial matter, Defendant misreads the Bennett Affidavit.  Bennett is not attesting to the facts contained within the attached documents; he's offering true and accurate copies of documents produced in discovery.  Bennett has personal knowledge as to whether he has submitted true and accurate copies of documents produced in discovery.  And Defendant ignores the reality that filing documents pursuant to attorney declaration is a well-established practice.  *See, e.g., Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co., Inc.*, 642 F. Supp. 2d 493, 511 (W.D.N.C. 2009).  "Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007).  Accordingly, courts have warned litigants like Defendant that "[i]t is disingenuous and wasteful" to object to one's own documents based upon personal knowledge or authentication.  *Id.* (quoting *Comm. Data Servers, Inc. v. IBM*, 262 F.Supp.2d 50, 60 (S.D.N.Y. 2003)).

     Further, as to the documents that Plaintiffs themselves produced, the Court finds that there is sufficient circumstantial evidence to authenticate those documents.  *See United States v. Balice*, 505 F. App'x 142, 146 (3d Cir. 2012) ("The burden of proof under Rule 901 is slight, requiring only a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be."); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 928 (3d Cir. 1986) (noting that distinctive characteristics of the challenged documents – such as "company logos and other trademarks, the professional appearance of the various handbooks and manuals, and the specific nature of the contents" – are sufficient to overcome the slight authentication admissibility burden).  Exhibit A includes customer complaints about the Subject Goods addressed to an OFI employee.  *See United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000) (authenticating emails based on the email addresses in the headers, explanations in the body of the emails, defendants' conduct after receiving the emails, and other circumstantial evidence).  Exhibit B is a letter on Defendant's own letterhead addressed to OFI regarding the customer complaints.  Exhibit D contains warehouse receipts with "Port Newark Refrigerated Warehouse Company" printed along the top.  And Exhibit G includes work orders and invoices for "Port Newark Refrigerated Warehouse," which contain a "Refrigeration Design & Service Inc." logo.  Finally, as to Exhibit J, Plaintiffs provided the Court with an email from Bennett to Plaintiffs, dated April 19, 2013, describing it as a "transcript of a telephone conversation between Mr.

---

[5] Defendant also objects to the Expert Reports, which were originally attached to the Bennett Declaration as Exhibits H and I.  However, as explained below, Plaintiffs have cured any defects regarding the Expert Reports.

Barrillaro [an employee of OFI] and Mrs. Blanc [an employee of Defendant]." The Court also notes that Defendant does not claim that the transcript is inaccurate. Finally, even if there were not sufficient circumstantial evidence to authenticate these documents, they can be authenticated through testimony at trial. Accordingly, the Court could still consider them in connection with Plaintiffs' opposition. *See Celotex Corp.*, 477 U.S. at 324 (holding that a nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment").

The Court moves next to Defendant's argument that the Court should not consider Exhibits F and J because they were not produced during discovery. The Court finds that Plaintiffs were under no obligation to provide Defendant with Exhibit F – the McLaughlin Declaration. McLaughlin is a fact witness for Plaintiffs – not an expert – and was identified in documents produced by Plaintiffs as an individual with knowledge about the case. However, the Court agrees that paragraph 20 of the McLaughlin Declaration is an inadmissible opinion and will not consider that statement.[6] And as to Exhibit J – which is a copy of a transcribed telephone conversation – Plaintiffs provided the Court with proof that Defendants received that document via email on April 19, 2013. Letter from William R. Bennett III Ex. 6, ECF No. 83-6.

The Court will thus sustain Defendant's objection to paragraph 20 of the McLaughlin Declaration, but will overrule all other objections to the Bennett Declaration and the McLaughlin Declaration.

### B. The Expert Reports

Finally, Defendant objects to the Expert Reports, which Plaintiff initially submitted without a sworn declaration attached to the Bennett Declaration as Exhibit H (Brecht Report) and Exhibit I (Powers Report). A court should not consider an unsworn expert report when evaluating a motion for summary judgment. *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir.1989) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1980). However, on May 30, 2014, Plaintiffs cured the defect by providing sworn declarations from Dr. Brecht and Mr. Powers. *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006) *aff'd*, 224 F. App'x 972 (Fed. Cir. 2007).

Defendant further objects to the Expert Reports on the grounds that they are irrelevant to the issues raised in Defendant's summary judgment motion. The Court disagrees. The Expert Reports each provide evidence as to whether overcrowding at PNRW's facility damaged the Subject Goods. *See* Decl. of Patrick Brecht 13, ECF No.

---

[6] In paragraph 20, McLaughlin, a lay witness, states that "[b]ased upon my inspections of the PNRW facility in 2006 and 2010, I believe that the refrigeration system as of September 2011 was outdated, in a state of disrepair, antiquated, inefficient, and unable to maintain proper cooling of its refrigeration rooms."

75; Decl. of Pierce N. Power 34, ECF No. 76.  Defendant's objections to the Expert Reports will be overruled.

## II.  MOTION FOR SUMMARY JUDGMENT

Having considered Defendant's lengthy and almost entirely unmeritorious objections, the Court turns to the parties' summary judgment motions.  The Court will deny summary judgment on all but one issue.

### A.  UNDISPUTED FACTS

The following facts are undisputed.  Defendant PNRW operated the PNRW Warehouse.  Defendant is a wholly-owned subsidiary of Newark Refrigerated Warehouse, Inc., which operates a different refrigerated warehouse at 104 Avenue C, Newark New Jersey (the "Newark Warehouse").  Plaintiff OFI is a seafood importer.  Plaintiff Watermark is a seafood wholesaler, trader, and distributor.  The Subject Goods include:  (1) 215,842 pounds of India Individually Quick Frozen and Block Frozen shrimp (the "India Shrimp"), (2) 696,210 pounds of Ecuador Block Frozen shrimp (the "Ecuador Shrimp"), (3) 28,065 pounds of Mexico shrimp, (4) 3,100 pounds of Thailand shrimp, and (5) 15,080 of miscellaneous other seafood products.  PNRW stored 96,210 pounds of the Subject Goods for the account of Watermark and the remainder for OFI.

The parties met in the fall of 2010 and shortly thereafter OFI began storing its shrimp at Defendant.  Pls.' Resp. to D.'s R. 56.1 Stmt. ("Pls.' Resp. Stmt.") ¶ 7, ECF No. 70.  The parties disagree about what they discussed at this meeting.  Defendant provided testimony indicating that the parties agreed on the storage rates and on Defendant's Terms and Conditions, while Plaintiffs submitted a declaration stating that only rates were discussed.  D.'s Mot. Summ. J. Ex. 4 66:9-13, ECF No. 69-11; Reddy Decl. ¶¶ 7,8.

Between October 29, 2010 and September 26, 2011, Defendant received and stored the Subject Goods for Plaintiffs.  D.'s R. 56.1 Stmt. ("D.'s Stmt.") ¶ 10, ECF No. 69-2.  Defendant stored all of the Subject Goods at the PNRW Warehouse.  D.'s Stmt. ¶¶ 19-20.  The Subject Goods were sorted and stored in 116 lots, each of which contained anywhere from one pallet (1 master carton) to 24 pallets (1,700 master cartons) of Subject Goods.  D.'s Stmt. ¶ 11.  Defendant's submitted a declaration stating that each time Defendant received a lot of the Subject Goods, it issued Plaintiffs its Standard Non-Negotiable Warehouse Receipt.  D.'s Mot. Summ. J. Ex 1 ¶¶ 7, 8; Ex. 6.  That declaration also states that Defendant mailed its Terms and Conditions to Plaintiffs each fiscal quarter.  D.'s Mot. Summ. J. Ex. 1 ¶ 9.  Plaintiffs admit that they received the Warehouse Receipts periodically, but submitted a declaration that Defendant only sent them the front of the Warehouse Receipts, which did not include the Terms and Conditions.  Reddy Decl. ¶¶ 6-8.  That declaration also states that they never received the Terms and Conditions from Defendant.  Reddy Decl. ¶¶ 6-8.

The Warehouse Receipt provided to Plaintiffs each month states on its face "SUBJECT TO CONTRACT TERMS AND CONDITIONS ON REVERSE SIDE." D.'s Stmt. ¶ 13; Bennett Decl. Ex C. Section 9(b) of the Terms and Conditions that Defendant provided in connection with its instant motion limits Defendant's liability as follows:

> (d) IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO GOODS FOR WHICH THE COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT COMPANY'S LIABILITY SHALL BE LIMITED TO THE LESSER OF THE FOLLOWING: (1) THE ACTUAL COST TO STORER OF REPLACING, OR REPRODUCING THE LOST, DAMAGED, AND/OR DESTROYED GOODS TOGETHER WITH TRANSPORTATION COSTS TO WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE LOST, DAMAGED, AND/OR DESTROYED GOODS ON THE DATE STORER IS NOTIFIED OF LOSS, DAMAGE AND/OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED AND/OR DESTROYED GOODS, (4) $0.50 PER POUND FOR SAID LOST, DAMAGED, AND/OR DESTROYED GOODS. PROVIDED, HOWEVER THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, STORER MAY, UPON WRITTEN REQUEST INCREASE COMPANY'S LIABILITY ON PART OR ALL OF THE GOODS IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS HAS OCCURRED.

D.'s Stmt. ¶ 15. Defendant maintains that Section 9(d) limits its liability for the Subject to $444,599.00. D.'s Stmt. ¶ 16. Further, Defendant directs the Court to Section 10(b) of the Terms and Conditions, which provides that "As a condition precedent to making any claim and/or filing any suite [sic], STORER shall provide COMPANY with a reasonable opportunity to inspect the GOODS which are the basis of STORER'S claim." D.'s Stmt. ¶ 18.

On August 28, 2011, Hurricane Irene made landfall in New Jersey. D.'s Stmt. ¶ 23. The PNRW Warehouse lost power for two to six hours. D.'s Stmt. ¶ 25. The Newark Warehouse also lost power during the storm. D.'s Mot. Summ. J. Ex. 4 81:5-9. Due to the loss of power, 10 containers that should have been sent to the Newark Warehouse were rerouted to the PNRW Warehouse. D.'s Stmt. ¶ 27; Pls.' Resp. Stmt. ¶¶ 25, 27. Plaintiffs submitted an expert opinion that, as result of the rerouting, the PNRW Warehouse became filled beyond capacity and was unable to maintain the proper storage temperature for the Subject Goods. Decl. of Patrick Brecht 13. On the other hand, Defendant provided testimony stating that its refrigeration system could maintain proper temperatures even if the PNRW Warehouse was over capacity. D.'s Mot. Summ. J. Ex. 4 152:14-19.

8

Plaintiffs submitted emails showing that in September 2011, OFI received numerous complaints from customers stating that they received spoiled seafood from the PNRW Warehouse. Bennett Decl. Ex. B. In two letters dated September 20, 2011, each Plaintiff made a claim against PNRW for approximately $5,000,000.00 in damages to the Subject Goods. D.'s Stmt. ¶ 29. Defendant responded the next day with a letter stating:

> We have not had abnormal operating conditions at Port Newark Refrigerated Warehouse that would account for your claim . . . . This week, we are extremely busy and cannot devote manpower to pull pallets for you to inspect during operating hours . . . . I will make arrangements to enable you to examine your freight on Monday.

Bennett Decl. Ex. B.

On September 27, 2011, Defendant informed its insurance broker of Plaintiffs' claims, who instructed Defendant not to release any of the Subject Goods until the insurer had a chance to inspect them. D.'s Stmt. ¶¶ 30-31. On September 28, 2011, Defendant advised Plaintiffs' that the Subject Goods were on hold and that it would not release the Subject Goods. D.'s Stmt. ¶ 33. That same day, Plaintiffs' representative, Michael Barillaro, asked why the Subject Goods were on hold. D.'s Stmt. ¶ 34. Defendant explained that its insurer had instructed Defendant not to release the products that were subject to Plaintiff's claim. D.'s Stmt. ¶ 35. Barillaro then stated that Plaintiffs' claim was only for the Ecuador shrimp. D.'s Stmt. ¶ 36. Defendant's Vice President, Daniel Taskila, testified that he told Barillaro that if he provided something in writing specifying which products were part of Plaintiffs' claim, Defendant would release the uninvolved products.[7] D.'s Mot. Summ. J. Ex. 8 99:4-100:16, ECF No. 69-15. Later that day, Barillaro clarified that all of the Subject Goods were part of Plaintiffs' claim. D.'s Stmt. ¶ 39. Defendant provided testimony stating it did not receive another request from Plaintiffs to release the Subject Goods until October 26, 2011, when Defendant advised Plaintiffs that the Subject Goods were available for pick up. D.'s Mot. Summ. J. Ex. 8 100:17-101:13. Plaintiffs submitted a declaration stating that they made numerous requests for the Subject Goods' release. Reddy Decl. ¶ 9.

OFI's cargo insurers retained Christopher Bender to inspect the Subject Goods. D.'s Stmt. ¶ 42. On September 26, 2011, October 20, 2011, and November 21, 2011, Bender, Barillaro, and Defendant inspected the Subject Goods. D.'s Stmt. ¶ 41. They inspected 100 of the 116 lots then in storage. D.'s Stmt. ¶ 41, 43-45. The lots vary in size and type of shrimp and the number of master cartons. D.'s Stmt. ¶ 50. Defendant claims, based on Bender's testimony, that for each lot inspected, Plaintiffs inspected only two to three master cartons, for a total of 200 to 300 master cartons. D.'s Stmt. ¶ 51.

---

[7] Plaintiff's claim that PNRW refused to release all of Plaintiff's cargo, but did not cite to anything in the record supporting this assertion.

And an expert witness for Defendant submitted an affidavit stating that Plaintiffs only inspected between 6% and 9% of the Subject Goods.  D.'s Mot. Summ. J. Ex. 3 ¶ 14, ECF 69-5.  Plaintiffs maintain, based on Reddy's declaration, that each lot and each carton were eventually inspected.  Reddy Decl. ¶ 10 ("After we were able to receive our cargo back we inspected each lot and each carton.").  The parties disagree as to how many lots were damaged.  D.'s Stmt. ¶ 47; Pls.' Resp. Stmt. ¶ 47.  Plaintiffs submitted the Reddy Declaration as proof that all of the Subject Goods suffered temperature abuse, while Defendant provided an expert affidavit stating that Plaintiffs deemed 18% of the lots inspected undamaged.  D.'s Mot. Summ. J. Ex. 3 ¶ 12; Reddy Decl. ¶ 10.

Relevant to mitigation of damages, the parties disagree as to the shelf life of the Subject Goods.  Plaintiffs submitted a declaration stating that if the frozen shrimp were stored at 0°F, they had a shelf life in excess of 18 months.  Reddy Decl. ¶ 11.  Defendant maintains that the India Shrimp or the Ecuador Shrimp had a shorter shelf life.  Plaintiffs admit that they did not sell the India Shrimp or the Ecuador Shrimp within their shelf life.  D.'s Stmt. ¶¶ 59, 60; Pls.' Resp. Stmt. ¶¶ 59, 60.  However, Plaintiffs also submitted the Reddy Declaration, which states that Plaintiffs sold the Subject Goods for "the best possible price we could get."  Reddy Decl. ¶ 12.

### B.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 322-23; *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  *Id.*  The opposing party must do more than just rest upon mere allegations, general denials, or vague statements.  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  *Anderson*, 477 U.S. at 256-57.

## C.  DISCUSSION

Defendant moves for summary judgment on the following issues:

(1)  Whether Section 9(d) of the Terms and Conditions limits Defendant's liability.
(2)  Whether Plaintiffs appropriately mitigated their damages.
(3)  Whether Defendant is liable for conversion.
(4)  Whether Defendant breached the covenant of good faith.
(5)  Whether overcrowding caused damage to the Subject Goods.
(6)  Whether Plaintiffs inspected a representative sample of the Subject Goods.
(7)  Whether Plaintiffs recover for Subject Goods deemed undamaged.
(8)  Whether Watermark has capacity to sue.

Plaintiffs, in turn, cross-move for summary judgment on some of those issues.  The Court finds that there are numerous issues of material fact and will deny both motions, with the exception that the Court will grant Plaintiffs' cross-motion regarding Watermark's capacity to sue.

### i.  Whether Section 9(d) of the Terms and Conditions limits Defendant's liability.

Defendant argues that Section 9(d) of the Terms and Conditions limits the amount that Plaintiffs can recover for damages under Counts I, II, III, and V of the Second Amended Complaint.  Plaintiffs argue that Section 9(d) is not binding because Defendants never provided the Terms and Conditions to them.  Plaintiffs further argue that Defendant cannot limit its liability for gross negligence.

New Jersey law permits a warehouse to limit its liability for loss or damage.  N.J. Stat. Ann. 12A:7-204(b).  A warehouse's liability limitation provision is binding against a bailor, provided that the warehouse receipt calls attention to the provision, so as to inform the bailor of its terms.  *Silvestri v. South Orange Storage Corp.*, 81 A.2d 502, 504-05 (N.J. Super. Ct. App. Div. 1951).  However, the limitation provision cannot create a complete exemption from liability for losses proximately resulting from the negligence of the bailee.  *Id.* at 504.

Here, genuine issues of material fact exist as to whether Section 9(b) of the Terms and Conditions limits Defendant's liability for the Subject Goods.  The record contains conflicting evidence as to whether Plaintiffs agreed to the Terms and Conditions.  Defendant submitted evidence showing that it provided the Terms and Conditions, which included the limitation provision, to Plaintiffs.  D.'s Mot. Summ. J. Ex 1 ¶¶ 7-9; Ex. 6.  And Plaintiffs submitted evidence showing they never received the Terms and Conditions.  Reddy Decl. ¶¶ 6-8.  Thus, the Court will deny Defendant's motion for summary judgment on this issue.

As to Plaintiffs' argument that the liability limitation, if enforceable, would not apply to its gross negligence claim in Count III, the Court disagrees. While a common carrier and a bailee cannot "''effectuate a complete exemption from liability for losses proximately resulting from the negligence of the carrier or bailee,'" nothing prevents them from placing limitations on that liability. *Choice Canning Co. v. MCST Preferred Transp., Inc.,* No. A-4165-05T3, 2006 WL 3511467, at *3 (N.J. Super. Ct. App. Div. Dec. 7, 2006) (quoting *Silvestri*, 81 A.2d at 504); *see also St. Paul Fire & Marine Ins. Co. v. Wells Fargo Alarm Servs.*, No. 95-712, 1995 WL 306642, at *5 (D.N.J. May 9, 1995) (citing *Tessler and Son v. Sonitrol Sec. Sys.*, 497 A.2d 530, 532-33 (N.J. Super. Ct. App. Div. 1985). Further, whether Defendant acted with gross negligence is a genuine issue of material fact. See, e.g., D.'s Mot. Summ. J. Ex. 4 45:18-46:10; Bennett Decl. Exs. F, H, I. Thus, Plaintiff's request for summary judgment on this issue will likewise be denied.

### ii. Whether Plaintiffs appropriately mitigated their damages.

Defendant next asks the Court to find that Plaintiffs failed to adequately mitigate damages for some of the Subject Goods, because those Subject Goods were sold after their shelf life expired. Specifically, Defendant argues that Plaintiffs did not sell 5,528 pounds of India Shrimp until after the expiration of their shelf life of 12 months and did not sell 2,200 pounds of Ecuador Shrimp until after the expiration of their shelf life of 18 months.

Under New Jersey law, parties injured by a breach of contract must take reasonable steps to mitigate their damages. *State v. Ernst & Young, L.L.P.*, 902 A.2d 338, 348 (N.J. Super. Ct. App. Div. 2006). Whether a plaintiff's mitigation efforts were reasonable is a question of fact. *Ingraham v. Trowbridge Builders*, 84, 687 A.2d 785, 791 (N.J. Super. Ct. App. Div. 1997). The burden of proof in mitigation of damages rests on the defendant. *Wade v. Kessler Inst.*, 778 A.2d 580, 591 (N.J. Super. Ct. App. Div. 2001), *aff'd*, 798 A.2d 1251 (2002).

Here, a reasonable jury could find that Plaintiffs took appropriate steps to mitigate their damages. For instance, while Defendant submitted evidence showing that Plaintiffs waited until after the shelf life had expired to sell some of the frozen shrimp, Plaintiffs submitted evidence indicating that Defendant hindered their mitigation efforts. D.'s Stmt. ¶ 59; Reddy Decl. ¶ 9. Defendant's motion for summary judgment on this issue will be denied.

### iii. Whether Defendant is liable for conversion.

In Count IV of the Amended Complaint, Plaintiffs assert a claim for conversion based on Defendant's refusal to return the Subject Goods to them until October 26, 2011. Defendant argues that summary judgment in its favor is warranted because Section 10(b) of the Terms and Conditions permitted it to hold goods for inspection and because

Plaintiffs have provided no evidence of damages.  Plaintiffs argue that Defendant's refusal to return the Subject Goods hindered their attempts to mitigate the loss and exacerbated the damage by forcing the shrimp to remain in a warm warehouse.  Plaintiffs ask the Court to find that Defendant converted their goods and that any the alleged limitation provision does not apply to their conversion claim.

"Conversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property."  *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citations omitted); *see also Mueller v. Technical Devices Corp.*, 8 N.J. 201, 207, 84 A.2d 620, 623 (1951)).  Under New Jersey law, a limitation on liability "is not effective with respect to the warehouse's liability for conversion to its own use."  N.J. Stat. Ann. § 12A:7-204(b).

Factual issues exist as to whether Defendant is liable for conversion.  Defendant provided evidence showing that Plaintiffs' agreed to Section 10(b) of the Terms and Conditions, which permitted them to hold goods for inspection.  D.'s Mot. Summ. J. Ex 1 ¶¶ 7-9; Ex. 6.  Plaintiffs submitted evidence showing that they never assented to the Terms and Conditions and made numerous requests for release of the Subject Goods.  Reddy Decl. ¶¶ 6-9.  Further, a reasonable jury could find that Defendant's refusal to return the Subject Goods damaged Plaintiffs by delaying their efforts to mitigate damages or subjecting the Subject Goods to additional temperature abuse.  Notably, "New Jersey courts permit conversion claims for only nominal damages and, in certain instances, even permit an award of punitive damages in the absence of compensatory damages."  *City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, No. 11-2658, 2014 WL 4755487, at *8 (D.N.J. Sept. 24, 2014) (citations omitted).  Finally, there are factual issues as to whether any conversion was for Defendant's own use, so as to void any limitation provision.  Accordingly, both Defendant's and Plaintiffs' motion for summary judgment on this issue will be denied.

### iv. Whether Defendant breached the covenant of good faith.

In Count V, Plaintiffs assert a violation of the implied covenant of good faith and fair dealing.  Every contract in New Jersey contains a covenant of good faith and fair dealing.  *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997).  Under that covenant, neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  *Palisades Properties, Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965).  In other words, "[a] party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation."  *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000).

Contrary to Defendant's arguments, a reasonable jury could conclude that Defendant violated the implied covenant of good faith and fair dealing.  For instance,

Plaintiffs have produced evidence showing that Defendant refused to release the Subject Goods for over a month and initially refused to let Plaintiffs into the PNRW Warehouse to inspect the Subject Goods. Bennett Decl. Ex. B; Reddy Decl. ¶ 9. Defendant has submitted evidence indicating that these actions were reasonable. However, Plaintiffs have also submitted evidence of overcrowding at the PNRW Warehouse, from which a reasonable jury could conclude that Defendant's refusal to provide Plaintiffs with access to the Subject Goods was in bad faith. *See* Decl. of Patrick Brecht 13, ECF No. 75; Decl. of Pierce N. Power 34. The Court will thus deny Defendant's motion for summary judgment on this claim.

### v. Whether overcrowding caused damage to the Subject Goods.

Defendant next asks the Court to find that there is no evidence that overcrowding caused damage to the Subject Goods. Plaintiff cross-moves for summary judgment on the "issue" of whether the PNRW Warehouse was filled beyond capacity. Pls.' Opp'n Br. 21, ECF No. 70-1.

Plaintiff's cross-motion is premised on a misunderstanding of the summary judgment standard and will be denied. While Court agrees that the fact that the PNRW Warehouse was over capacity is undisputed, that does not entitle Plaintiffs to judgment on any legal issues. Genuine issues of material fact remain as to whether, as a result of being filled beyond capacity, the PNRW Warehouse was unable to maintain proper temperatures for the Subject Goods.

The Court will also deny Defendant's motion. Plaintiffs produced ample evidence supporting their claim that overcrowding caused damage to the Subject Goods. *See, e.g.,* Decl. of Patrick Brecht 13, ECF No. 75; Decl. of Pierce N. Power 34.

### vi. Whether Plaintiffs inspected a representative sample of the Subject Goods.

Defendant also asks this Court to find, as a matter of law, that the sample size of Subject Goods inspected is insufficient to support Plaintiffs' claim that all the Subject Goods were damaged. Plaintiffs, in turn, cross-moves for the Court to grant summary judgment in their favor on this issue.

"[T]he extent and amount of damages to an entire shipment may be extrapolated from a representative sampling." *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982); *see also Royston Distributors, Inc. v. Moore-McCormack Lines, Inc.*, 252 F. Supp. 480, 488 (E.D. Pa. 1965). A sampling is sufficient proof of damages when "a reasonably representative sample has been taken and so long as the sample is sufficient to indicate fairly the quality, condition and nature of damage to the whole cargo." *Amstar Corp. v. M/V Alexandros T.*, 472 F. Supp. 1289, 1297 (D. Md. 1979).

Genuine factual disputes exist as to the amount of goods inspected. Defendant submitted an affidavit stating that Plaintiffs inspected between 6% and 9% of the Subject Goods. D.'s Mot. Summ. J. Ex. 3 ¶ 14, ECF 69-5. Plaintiffs submitted a declaration stating that each lot and each carton were eventually inspected.[8] Reddy Decl. ¶ 10. Thus, the Court will deny summary judgment on this issue.

### vii. Whether Plaintiffs can recover for Subject Goods deemed undamaged.

Defendant argues that Plaintiffs should not be permitted to recover for the goods that were found undamaged during the inspection. Plaintiffs maintain that all of the goods suffered from temperature abuse and were therefore appropriately withheld from sale for human consumption. Factual disputes exist as to whether all of the Subject Goods suffered from temperature abuse. D.'s Mot. Summ. J. Ex. 3 ¶ 12; Reddy Decl. ¶ 10. Further, a reasonable jury could conclude that, because some of the Subject Goods were visibly damaged, all of the Subject Goods were unfit for sale. The Court will deny summary judgment on this issue.

### viii. Whether Watermark has capacity to sue.

Defendant asks the Court to find that Watermark does not have capacity to sue Defendant, because Watermark is a New York entity that was dissolved fifteen years ago. Plaintiff argues that Watermark is a California entity with capacity to sue. Both parties seek summary judgment on this issue.

As clarified both by the Reddy Declaration and by Plaintiffs on the record at a hearing before this Court on November 18, 2014, Watermark is a California entity. Defendant's motion for summary judgment will therefore be denied. Further, as Defendant has provided nothing showing that Watermark is organized in a state other than California,[9] the Court will grant summary judgment to Plaintiffs on this issue.

### III. CONCLUSION

For the above reasons, Defendant's motion to strike, which the Court has construed as objections under Rule 56(c), is **SUSTAINED** as to the paragraph 20 of the McLaughlin Declaration and **OVERRULED** as to all other objections. Further, Defendant's motion for summary judgment is **DENIED**. Finally, Plaintiffs' cross-motion

---

[8] Defendant's claim that it objected to paragraph 10 of the Reddy Declaration under the sham affidavit doctrine is incorrect. Defendant only objected to paragraph 7 under that doctrine. Further, Defendant points to nothing in Reddy's deposition testimony that contradicts his declaration that "each lot and each carton were eventually inspected" in paragraph 10.

[9] Defendant submitted a record from the California Secretary of State showing that "RFD Enterprises, Inc." is registered in California. This submission indicates that there is a typo in the Reddy Declaration, which states that "Watermark Foods is a "d/b/a' [sic] of RFD Enterprises, LLC, a California Corporation." It does not create a genuine issue of material fact.

for summary judgment is **GRANTED** as to whether Watermark has capacity to sue Defendant and **DENIED** as to all other issues.

/s/ William J. Martini<br>**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 12, 2015**